## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| J&L Pack, Inc., d/b/a Play It Again Sports, Bass Enterprises, Inc., d/b/a Play It Again Sports, Northern Lights Trading Company, d/b/a Play It Again Sports, Carte Sports, Inc., d/b/a Play It Again Sports, BRJ Enterprises, LLC, d/b/a Play It Again Sports, Early Sports, LLC, d/b/a Play It Again Sports, LRS Sports, Inc., d/b/a Play It Again Sports, | ) ) ) ) ) ) ) ) | Civil Action No: |
| Plaintiffs, | ) ) | Jury Trial Demanded |
| v. | ) ) | |
| Nova Casualty Company, | ) ) | |
| Defendant. | ) ) ) | |

### COMPLAINT

NOW COME Plaintiffs J&L Pack, Inc., d/b/a Play It Again Sports, Bass Enterprises, Inc., d/b/a Play It Again Sports, Northern Lights Trading Company, d/b/a Play It Again Sports, Carte Sports, Inc., d/b/a Play It Again Sports, BRJ Enterprises, LLC, d/b/a Play It Again Sports, Early Sports, LLC, d/b/a Play It Again Sports, and LRS Sports, Inc., d/b/a Play It Again Sports (collectively "Plaintiffs"), for their Complaint against Defendant Nova Casualty Company ("Defendant" or "Nova") allege as follows:

### Introduction

1.    Each of the seven Plaintiffs is a franchisee operating a Play It Again Sports store that sells sports equipment and apparel. Plaintiffs' stores operate in Illinois, West Virginia, Michigan, Ohio and California.

2.      Beginning in March 2020, officials in Plaintiffs' home states entered orders restricting local business operations and limiting consumer activity in response to the COVID-19 pandemic.

3.      Plaintiffs are all covered by Business Owners Insurance Policies issued by Nova, which Plaintiffs purchased to protect their livelihoods in the event of unforeseen occurrences that impact their businesses.  Each of the Plaintiff stores faithfully paid premiums over the years, some for as many as 29 years, in order to be able to recoup lost income under the Business Income (often referred to as "Business Interruption") protection of the policies.

4.      Now, when Plaintiffs actually need to avail themselves of the Business Interruption coverage they have been purchasing all this time, Nova has chosen to misrepresent the terms of the coverage and otherwise construct excuses to avoid paying these legitimate claims.

5.      Prior to any claim even having been submitted by any of the Plaintiffs, insurance industry representatives were informing brokers, agents, policyholders, regulators, legislators, federal and state officials and members of the press that Business Interruption coverage was never meant to cover income lost due to a pandemic, but was intended only for situations in which an event such as a fire caused visible, structural harm to an insured's premises.  If that was the intent of the industry in general, or of Nova in particular, it was never discussed with or conveyed to any of the Plaintiffs.  To the contrary, Nova and the industry leadership that drafted the policies at issue chose broad language that imposed no such limits on the scope of coverage, and instead provided Business Interruption coverage in the event of suspension of operations due to any "direct physical loss of or damage to" any covered premises.

6.      Apparently recognizing that the policies it drafted were broadly worded such that, given their ordinary, generally accepted meaning they would cover these claims, Nova misrepresented the terms of the policies, distorting the words so as to support a denial of coverage.  In particular, Nova denied Plaintiffs' claims by concluding, without investigation, that there was no "physical damage" to Plaintiffs' property (see denial letters, attached as Exhibits 1 to 7) when the policies as written do not require that there be "physical damage" to trigger coverage, but instead require "direct physical loss of or damage to" covered premises, wording that carries with it a legal meaning materially distinct from "physical damage." Nova also relied on a virus exclusion that does not apply here.  Nova performed no real investigation, so it cannot know whether there is any presence of the COVID-19 virus at Plaintiffs' Covered Properties, but Nova apparently disregarded Plaintiffs' written assurances to that effect.

7.      As a result of Nova's wrongful denial of coverage, Plaintiffs have now been forced to bring this lawsuit seeking insurance benefits at a time when they are most vulnerable and in need of coverage to replace income lost due to executive orders in their respective states restricting their business operations and directing owners, employees and potential customers to stay at their residences.  Plaintiffs' losses already amount to well over $500,000 and continue to increase even as they are permitted to open their stores; springtime tends to be Play It Again Sports' busiest time as outdoor sports get underway for the year and teams are organized, turning to Play It Again Sports for their equipment and uniform needs.

8.      Nova's denials of Plaintiffs' claims are arbitrary, unreasonable, contrary to the language of Plaintiff's insurance policy, and contrary to law.  Plaintiffs therefore bring this action for a declaratory judgment establishing that it is entitled to receive the benefit of the

insurance coverage they purchased, for indemnification of the business losses they have sustained, for breach of contract, and for bad faith claims handling.

**Parties**

9.      Plaintiff J&L Pack, Inc., d/b/a Play It Again Sports, is located in Schaumberg, Illinois. Plaintiff J&L Pack is insured by Nova Business Owners Policy No. LSR-BP-0035209-0 for the period August 27, 2019 to August 27, 2020.

10.     Plaintiff Bass Enterprises, Inc., d/b/a Play It Again Sports, is located in Crystal Lake, Illinois. Plaintiff Bass Enterprises is insured by Nova Business Owners Policy No. LSR-BP-0034827-1 for the period September 16, 2019 to September 16, 2020.

11.     Plaintiff Northern Lights Trading Company, d/b/a Play It Again Sports, is located in Columbus, Ohio. Plaintiff Northern Lights Trading is insured by Nova Business Owners Policy No. LSR-BP-0015093-9 for the period June 19, 2019 to June 19, 2020. Northern Lights has owned and operated its store for 29 years and the current pandemic puts the owners' retirement plans at risk.

12.     Plaintiff Carte Sports Company, Inc., d/b/a Play It Again Sports, is located in Parkersburg, West Virginia. Plaintiff Carte Sports Company is insured by Nova Business Owners Policy No. LSR-BP-0033499-6 for the period December 23, 2019 to December 23, 2020. Carte Sports has owned and operated its store for five years.  Shortly before the pandemic, Carte was planning to sell the store and had a buyer lined up; that buyer backed out when the store was forced to close.  Now, Carte may need to liquidate the store in the coming weeks to avoid incurring more debt.

13.     Plaintiff BRJ Enterprises, LLC, d/b/a Play It Again Sports, is located in Dexter, Michigan and operates its store in Ann Arbor. Plaintiff BRJ Enterprises is insured by Nova

Business Owners Policy No. LSR-BP-0035530-0 for the period March 10, 2020 to March 10, 2021.

14.     Plaintiff Early Sports LLC, d/b/a Play It Again Sports, is located in Clawson, Michigan. Plaintiff Early Sports is insured by Nova Business Owners Policy No. LSR-BP-0035301-0 for the period October 25, 2019 to October 25, 2020.

15.     Plaintiff LRS Sports, Inc., d/b/a Play It Again Sports, is located in Torrance, California. Plaintiff LRS Sports is insured by Nova Business Owners Policy No. LSR-BP-0035294-0 for the period December 16, 2019 to December 16, 2020. LRS Sports sought permission from Torrance authorities to operate its store curbside during the stay-at-home period, but that request was denied and LRS was forced to completely shutter the store until that order was lifted. (The insurance policies referenced in paragraphs 9 through 15 are collectively referred to as the "Policies" and are attached as Exhibits 8 to 14).

16.     Upon information and belief, Defendant Nova Casualty Company is held by AIX Holdings, a subsidiary of The Hanover Insurance Group. Nova's principal place of business is in Buffalo, New York. Defendant is an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiffs in Illinois and elsewhere, and otherwise conducts business throughout this District, the State of Illinois, and the United States. At all times relevant to this suit, Defendant was licensed to do business in the State of Illinois.

**Jurisdiction**

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

18.     This Court has personal jurisdiction over Nova pursuant to Illinois' long-arm statute, 735 ILCS 5/2-209, because this Complaint concerns: (1) one or more contracts Nova made to insure property and/or risk in Illinois, (2) business that Nova transacted within Illinois, and (3) one or more contracts and/or promises Nova made that are substantially connected with Illinois. 735 ILCS 5/2-209(a)(1), (4), (7). In addition, Nova exercises systematic and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, and seeking additional business in Illinois.

19.     Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this District and a substantial part of the property that is subject to this action is situated in this District.

## Factual Background

20.     In March 2020, officials in Illinois, Ohio, West Virginia, Michigan and California ordered the closing of all non-essential businesses (collectively, "Executive Orders") as follows:

a.      By Executive Order dated March 20, 2020, Illinois Governor Pritzker ordered: "All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State . . . ."

b.      By Order dated March 22, 2020, Ohio Director of Health ordered: "All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below."

c.      By Executive Order dated March 23, 2020, West Virginia Governor Justice ordered "all businesses and operations in West Virginia, except Essential Businesses and Operations as defined below, are required to cease all activities within the state except for such minimum business operations as are necessary . . . ."

d.      By Executive Order dated March 24, 2020, Michigan Governor Whitmer ordered: "No person or entity shall operate a business or conduct

operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations."

    e.    By Executive Order dated March 19, 2020, California Governor Newsom required: "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors . . . ."

21.    In compliance with these and subsequent Executive Orders, Plaintiffs have been unable to operate their stores at all or at the capacity at which they were able to operate prior to the Executive Orders.

22.    As a result of their inability to operate their stores as they were prior to the Executive Orders, each of the Plaintiffs has suffered severe interruption to its business and critical loss of income.

23.    The Plaintiffs faithfully paid premiums to Defendant on their respective Policies, to obtain coverage for business interruption in the event of business closures or other business limitations by order of civil authority.

24.    Plaintiffs made claims under the Policies issued by the Defendant for losses suffered as a result of the Executive Orders relating to the Covid-19 global pandemic.

25.    Nova has denied all seven claims.  Copies of the denial letters are attached as Exhibits 1 to 7.

26.    Under the terms of the Policies, Defendant "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."

27.    As a part of this coverage, Defendant agreed to "pay for the actual loss of Business Income" sustained "due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or damage to

property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." The Policies define "operations" as "your business activities occurring at the described premises." The Policies further define "Period of Restoration" as the period of time beginning 72 hours after "direct physical loss or damage for Business Income Coverage" and ending when the property is repaired, rebuilt or replaced.

28.    In summary, under the Policies, when a Covered Cause of Loss—such as a global health crisis and forced abrogation of Plaintiffs' businesses—causes Plaintiffs' business operations to be "suspended," Defendant is obligated to pay for the loss and/or damage Plaintiffs experience as a result, including lost business income.

29.    Additionally, the Policies provide coverage for losses incurred when civil authorities restrict access to Plaintiffs' businesses. Specifically, the Policies provide:

> Civil Authority: When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
>
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

30.    Defendant denied Plaintiffs' claims without regard to the actual language of the Policies, claiming in reservation of rights letters that coverage would be provided only for "direct physical damage."

31.    In fact, the Policies provide that there are two triggering events that can invoke the Business Interruption coverage.  One is "direct physical loss of Covered Property" and the second is "damage to Covered Property."

32.    The events giving rise to Plaintiffs' claims, as set forth above, satisfy both of these coverage triggers.

33.    The Policies do not define "damage" or "loss;" therefore under well-recognized, undisputed rules of construction, these terms are to be given their generally understood meaning and any ambiguity should be construed in favor of coverage for Plaintiffs and against Defendant, who selected the language for inclusion in its adhesion contracts.

34.    Common dictionary definitions of "loss" include "deprivation" and "the harm or privation resulting from loss or separation."  Common dictionary definitions of "damage" include the "harm caused to something in such a way as to impair its value, usefulness or normal function."

35.    The events described above have obviously deprived Plaintiffs of the use of their stores and separated them from their stores.  Additionally, these events have impaired the value and usefulness of the stores and prevented them from serving their normal function.  Therefore, under commonly accepted English usage, Plaintiffs have suffered both "physical loss of" and "damage to" their insured premises.

36.    Implicitly recognizing that the Policies as drafted trigger coverage for Business Interruption, Defendant nonetheless has denied or will deny coverage by pretending that the

Policies require "direct physical damage" to the premises, a term that does not appear in the Policies.

37.    Nova could have easily drafted the Policies to cover only "direct physical damage," simply by using that language.  Instead, by covering "physical loss of" or "damage to" property, Nova has agreed to cover the loss of use of and damage to the property.

38.    Plaintiffs duly complied with the policy conditions by promptly notifying Defendant of the suspension of their operations and resulting loss of income caused by the Executive Orders in their states requiring their businesses be shuttered and that customers, owners and employees stay home.

39.    Defendant's alternative interpretation of the policy language, that physical damage to the property is required, at best creates an ambiguity, and any ambiguity in policy language must be construed in favor of the insured.

40.    Because Plaintiffs have suffered both direct physical loss of their property and damage to their property, they have experienced a "Covered Cause of Loss" and are entitled to reimbursement under the Business Income provisions of the Policies.

41.    For these same reasons, Defendant is obligated to provide coverage under the "Civil Authority" provisions in the Policies.  Civil authorities ordered non-essential businesses in Plaintiffs' home states closed to public trade as a result of a dangerous condition, each of which experienced this Covered Cause of Loss such that "Civil Authority" provisions have been triggered.

42.    In denying coverage, Defendant also relied on provisions in the Policies excluding "loss or damage caused directly or indirectly" by "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

43.     Plaintiffs are unaware of any loss or damage caused by a virus, bacterium or other microorganism, and are unaware of the presence of any of these substances in their stores.  To the contrary, the suspension of their operations and the resulting loss of income arose from the direction of public health officials and civil authorities to close Plaintiffs' stores and consumers sheltering at home.

44.     It is the insurer's burden to prove a claim should be excluded, a burden that will not be met here, as Plaintiffs are not claiming damage due to the virus itself.

45.     The Policies include this virus exclusion language, but do not exclude coverage for global pandemics, or any of the circumstances giving rise to Plaintiffs' claims.  To the contrary, the Policies expressly provide coverage for these events.

## COUNT ONE
### BREACH OF CONTRACT: COVERAGE OF PROPERTY DAMAGE CLAIMS

46.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 45 as if fully set forth herein.

47.     The Policies cover and require Nova to pay the Plaintiffs "for the actual loss of Business Income" suffered while their stores are required to be closed by the Executive Orders.

48.     Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Defendant has failed to fulfill its insurance coverage obligations under the Policies' clear and unambiguous terms.

49.     By denying coverage for any losses or damage incurred by Plaintiffs in connection with the Executive Orders, Defendant has breached its coverage obligations under the Policies.

50.     The damages sustained by Plaintiffs are well in excess of $500,000 and are continuing to increase.

51.     In breach of its promises, Nova has failed to pay Plaintiffs during this unprecedented time where small businesses are bearing the brunt of widespread shutdowns.

WHEREFORE, Plaintiffs seek an award of compensatory damages in the amount of their Business Income losses, together with costs sustained herein and reasonable attorneys' fees.

### COUNT TWO
#### BREACH OF CONTRACT: COVERAGE OF CIVIL AUTHORITY CLAIMS

52.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 51 as if fully set forth herein.

53.     The Policies require Defendant to pay Plaintiffs "for the actual loss of Business Income [they] sustain" as a result of actions taken by a civil authority that prohibit access to Plaintiffs' premises, where those actions were taken in response to a dangerous condition resulting from a Covered Cause of Loss occurring at property other than a Plaintiff's property.

54.     The Executive Orders constitute actions of civil authorities prohibiting access to Plaintiffs' properties due to the pandemic, and Plaintiffs' claims otherwise meet the requirements for coverage under the Civil Authority provisions of the Policies.

55.     Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Defendant has failed to fulfill its insurance coverage obligations under the Policies' clear and unambiguous terms.

56.     By denying coverage for any losses or damage incurred by Plaintiffs in connection with the Executive Orders and the pandemic, Defendant has breached its obligations

under the Policies to cover all current and future losses stemming from civil authority closures of Plaintiffs' property.

57.     The damages sustained by Plaintiffs are well in excess of $500,000 and are continuing to increase.

WHEREFORE, Plaintiffs seek an award of compensatory damages in the amount of their Business Income losses, together with costs sustained herein and reasonable attorneys' fees.

## COUNT THREE
### DECLARATORY JUDGMENT: THE POLICIES HAVE BEEN TRIGGERED BY DIRECT PHYSICAL LOSS AND DAMAGE TO PROPERTY AND THE POLICIES' VIRUS EXCLUSIONS DO NOT APPLY

58.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 57 as if fully set forth herein.

59.     The Policies require Nova to pay Plaintiffs "for the actual loss of Business Income" suffered while their stores are required to be closed by the Executive Orders and while their businesses are impaired as the result of the Executive Orders.

60.     Plaintiffs have made claims for, and are entitled to, coverage for their lost Business Income under the terms of the Policies.

61.     Defendant has asserted that Plaintiffs' claims for coverage under the Policies are excluded by a virus exclusion endorsement and has denied Plaintiffs' claims.

62.     The insurer bears the burden of proving that a policy exclusion applies.

63.     Plaintiffs' Business Income losses were not caused by, and did not result from, an outbreak of the COVID-19 virus on Plaintiffs' properties and were not otherwise caused by the virus itself.

64.     As set forth above, true controversy exists between the parties concerning the parties' rights and obligations under the Policies.

WHEREFORE, Plaintiffs seek a declaratory ruling that the Policies have been triggered by direct physical loss of and damage to property, that the virus exclusion does not apply here because Plaintiffs' properties have not been exposed to the virus, and that coverage is afforded under the Policies.

## COUNT FOUR
### BAD FAITH CONDUCT UNDER SECTION 155 OF THE ILLINOIS INSURANCE CODE

65.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 64 as if fully set forth herein.

66.     Plaintiffs promptly submitted their claims following the required shutdown of their businesses for their resulting loss of income.

67.     Defendant denied Plaintiffs' claims on the grounds there is no physical damage to Plaintiffs' properties.

68.     In corresponding with Plaintiffs' counsel, Defendant misquoted the policy language, failed to understand which insured he was addressing and failed to appreciate the basis for the claims.

69.     Plaintiffs responded by explaining that the clear language of the Policies does not require "physical" damage to the property.

70.     Defendant's denials of coverage under these circumstances amount to bad faith.

WHEREFORE, Plaintiffs seek an award of compensatory and punitive damages, the statutory $60,000 penalty, and costs and attorneys' fees to the full extent recoverable under Section 155 of the Illinois Insurance Code.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated:  June 9, 2020                       Respectfully Submitted,

By:     /s/ Daniel I. Schlessinger
           Daniel I. Schlessinger
           Maria G. Enriquez
           Katherine Heid Harris
           JASZCZUK P.C.
           311 South Wacker Drive
           Chicago, Illinois 60606
           Tel: (312) 442-0509
           dschlessinger@jaszczuk.com
           menriquez@jaszczuk.com
           kheidharris@jaszczuk.com