UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J&L PACK, INC., d/b/a PLAY IT AGAIN SPORTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> NOVA CASUALTY COMPANY, <br><br> Defendant. | No. 20 C 3389 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Play It Again Sports is a sporting goods franchise with stores across the country. Several franchisees allege that their insurer, Nova Casualty Company, wrongfully denied coverage for losses they incurred due to government-ordered shutdowns arising from the COVID-19 pandemic. The parties filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). *See* R. 30, 34. The Court heard oral arguments on July 8, 2021. For the reasons that follow, Plaintiffs' motion is denied and Nova's motion is granted.

**Background**

Plaintiffs are seven franchisees that operate Play It Against Sports stores in Illinois, Ohio, West Virginia, Michigan, and California. R. 32 ¶¶ 2, 4, 6, 8, 10, 12, 14. In March 2020, at the outset of the COVID-19 pandemic, civil authorities in each of those states issued orders suspending or limiting operations of non-essential businesses. *Id.* ¶¶ 19-24; R. 2 ¶¶ 2, 20. The orders specifically required such businesses to "cease all activities" and "operations." *See* R. 32-8 at 3 (Illinois); R. 32-

9 at 2 (Ohio); R. 32-10 at 4 (West Virginia); R. 32-11 at 3 (Michigan); R. 32-12 at 2-3 (California).[1]

As operators of non-essential businesses, Plaintiffs contend that complying with the orders caused them to lose business income. *Id*. ¶ 28; R. 2 ¶¶ 21-22. They accordingly filed insurance claims with Nova, and now seek coverage under two separate policy provisions: the Business Income provision and the Civil Authority provision. R. 2 ¶¶ 24, 41, 47, 54.[2] Both provisions appear under Section 1 of the policy.

The Business Income provision states in relevant part:

> We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

R. 32-1 at 29.

The policy defines a "Covered Cause of Loss" as a "direct physical loss unless the loss is excluded or limited under Section 1 – Property." *Id*. at 24.

The Civil Authority provision covers loss of income caused by action of a civil authority that "prohibits access" to the insured's premises:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by

---

[1] The citations to page numbers throughout this opinion are based on the page number appearing in the top right-hand corner of the ECF-filed document.

[2] There are technically seven different policies at issue in this case, but the Business Income, Civil Authority, and Virus Exclusion provisions in each are identical. *See* R. 37 at 10 n.1. Thus, for ease of reference, the Court will refer to the policies in the singular and cite to one policy instead of all seven.

2

> action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> > (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
> >
> > (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

R. 32-1 at 32.

Nova denied coverage in April 2020. R. 32 ¶ 30. In a series of letters, the company stated that coverage was unavailable under the Business Income provision because there was no evidence that the suspension of Plaintiffs' businesses was caused by "direct physical loss of or damage to property." *See, e.g.*, R. 2-1 at 2-3. As for the Civil Authority provision, Nova wrote that the government orders were not issued in response "to damage to property away from the described premises nor were they in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage." *Id.* at 4. Finally, Nova stated in the letters that the loss of business income Plaintiffs experienced was caused by a virus—namely, the coronavirus—and that the policy's Virus Exclusion provision precluded coverage. *Id.* at 5.

That provision provides that Nova "will not pay for loss or damage caused directly or indirectly by . . . any virus, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease." R. 32-1 at 40, 43. The

3

exclusion also includes an anti-concurrent causation clause, which states that loss or damage is excluded "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id*. at 40. The exclusion applies "whether or not the loss event results in widespread damage or affects a substantial area." *Id*. at 40. This exclusionary language appears under Section 1 of the policy, the same section as the Business Income and Civil Authority provisions.

After receiving the denial letters, Plaintiffs filed suit in June 2020 and brought four separate claims. *See* R. 2. Counts I and II allege that Nova breached the parties' insurance contract by denying coverage under the Business Income and Civil Authority provisions.[3] Count III seeks a declaration that the policy has been "triggered by direct physical loss of and damage to property," and that the Virus Exclusion provision does not apply. Count IV contends that Plaintiffs are entitled to damages under Section 155 of the Illinois Insurance Code because Nova acted in bad faith when it denied coverage. As stated earlier, both parties have moved for summary judgment. R. 30; R. 34. Plaintiffs' motion is for partial summary judgment in that it is limited to the question of liability and does not address the bad faith claim. *See* R. 31 at 2.

---

[3] Plaintiffs' motion for partial summary judgment does not discuss the Civil Authority provision, and Plaintiffs chose not to respond to Nova's arguments regarding that provision in their opposition brief to Nova's motion. At oral argument, counsel for Plaintiffs said that he did not want to "formally concede" coverage under the Civil Authority provision, but he declined to advance any argument in favor of it. *See* R. 46 at 18.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

Under Illinois law, construction of an insurance policy is a question of law. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 342 (Ill. 2006).[4] "When construing the language of an insurance policy, a court is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Id.* at 342-43. "An insurance policy

---

[4] While the policies at issue were delivered to franchisees in five different states, the parties agree that Illinois law governs this dispute because there is no conflict of laws between the states regarding the interpretation of insurance contracts. *See* R. 43 at 3; R. 37 at 11 (citing *Gleim v. Roberts*, 919 N.E.2d 367, 370 (Ill. App. Ct. 2009) ("In the absence of a conflict in the relevant laws of the two states, the law of the forum state applies. That means that if a case is brought in Illinois, then Illinois law applies.")). The Court accordingly applies Illinois law here.

5

must be construed as a whole, giving effect to every provision." *Id.* at 343. "If the words used in the policy are unambiguous, they are given their plain, ordinary, and popular meaning." *Id.* "Although insurance policies are construed liberally in favor of coverage, this rule of construction comes into play only when the policy language is ambiguous." *Id.* "Words are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity where there is none." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006) (citations omitted).

As stated earlier, Plaintiffs assert coverage under two policy provisions: the Business Income provision and the Civil Authority provision. The Business Income provision provides coverage if operations are suspended due to "direct physical loss of or damage to property at the described premises." The loss or damage must be caused by or result from a "covered cause of loss." The Civil Authority provision provides coverage for losses incurred when, among other things, authorities prohibit access to the covered premises. The premises at issue here are Plaintiffs' stores.

Nova contends that neither provision applies, and argues that even if one or both did apply, the policy's Virus Exclusion provision defeats coverage since Plaintiffs' losses were caused by a virus. Nova points to several cases from this jurisdiction and others in which courts concluded that similar virus exclusions barred coverage for coronavirus-related losses. In response, Plaintiffs argue that the Virus Exclusion is not applicable because (1) the shutdown orders, not the virus, caused the loss of business income, and (2) Plaintiffs are unaware of any virus on their premises.

Plaintiffs' arguments are unpersuasive. Even if the Court found in Plaintiffs' favor regarding the Business Income and Civil Authority provisions, the Virus Exclusion is plain and unambiguous: Nova is not required to pay for loss or damage "caused directly or indirectly by . . . any virus . . . that induces or is capable of inducing physical distress, illness or disease." The coronavirus is a "virus" that is "capable of inducing physical distress, illness or disease," and while it may not have "directly" cause Plaintiffs' lost business income, there is no question that it was at least "indirectly" responsible. Without COVID-19, the shutdown orders simply would not exist—indeed, they were enacted *because of* the virus. *See, e.g.*, R. 32-8 at 2 (Illinois governor declaring action "in response to the outbreak of Coronavirus Disease 2019"); R. 32-10 at 11 (West Virginia governor stating that the order's intent is "to ensure that the maximum number of people self-isolate . . . to slow the spread of COVID-19 to the greatest extent possible."); R. 32-12 at 3 (California governor stating that "[o]ur goal is simple, we want to bend the curve, and disrupt the spread of the virus.").

Moreover, and as previously noted, the Virus Exclusion contains an anti-concurrent causation clause. *See* R. 32-1 at 40 ("Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss."). Under Illinois law, anti-concurrent causation clauses can preclude insurance coverage "if even one contributing cause is an excluded event." *Bozek v. Erie Ins. Grp.*, 46 N.E.3d 362, 369 (Ill. App. Ct. 2015); *see also Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 2021 WL 679227, at *3 (N.D. Ill. Feb. 22, 2021) ("[T]he question that matters when analyzing an anti-concurrent causation clause is whether an excluded cause was one contributing cause of

7

the loss at issue.") (internal quotation omitted). The coronavirus, an excluded event, set the shutdown orders in motion. As the virus spread in March 2020, public officials across the country imposed restrictions to slow its growth. Those restrictions, in turn, required Plaintiffs to cease certain activities at their stores. The virus, then, certainly contributed to Plaintiffs' lost income—especially since the clause applies "regardless of any other cause or event that contributes . . . in any sequence to the loss." This is not a situation where it's unclear why the orders were put in place. Quite the opposite—public officials launched public awareness campaigns and organized press conferences to make sure everyone knew that the orders were aimed at bending the curve of new cases. *See, e.g.*, *Do Your Part! IEMA, IDPH Release New Campaign to Encourage Residents to Stay Home during COVID-19*, State of Illinois (April 13, 2020), available at https://www2.illinois.gov/ready/Press/Pages/041320.aspx. Plaintiffs' position that the Virus Exclusion does not apply because the orders were the "exclusive cause" of their lost income simply defies common sense. *See AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 503 F. Supp. 3d 602, 607 (N.D. Ill. 2020) ("Plaintiff's argument that its losses occurred because the Indiana and Illinois governmental entities issued shutdown orders, not because of the virus itself, is unpersuasive.").

Plaintiffs' other argument—that they are unaware of any virus on their premises—does not fare any better. The exclusion covers "any virus" and relieves Nova of paying for loss or damage arising "directly or indirectly" from that virus. This all-encompassing language makes no reference to the covered premises, nor does it tether its applicability to any particular location. Several courts interpreting identical or nearly identical

8

language have concluded the same. *See, e.g.*, *Mashallah, Inc.*, 2021 WL 679227 at *4 ("[T]he argument that COVID-19 must be physically present at Plaintiffs' premises to trigger coverage is flatly contrary to the plain text of the Virus Exclusions, which contains no such requirement."); *Beach Glo Tanning Studio Inc. v. Scottsdale Ins. Co.*, 2021 WL 2206077 at *5 (D.N.J. May 28, 2021) ("The plain language of the Virus Exclusion does not require a virus to be at the insured property."); *LJ New Haven LLC v. AmGUARD Ins. Co.*, 2020 WL 7495622 at *6 (D. Conn. Dec. 21, 2020) (similar).

Nevertheless, Plaintiffs point to two out-of-circuit cases in support of their argument for the opposite result. In the first, *Urogynecology Specialist of Florida LLC v. Sentinel Insurance Company*, the court denied a motion to dismiss in part because the virus exclusion was ambiguous. 489 F. Supp. 3d 1297, 1302 (M.D. Fla. 2020). But as an initial matter, *Urogynecology Specialist* appears to be an outlier in the context of insurance disputes arising out of the pandemic; most district courts across the country have found similar exclusion provisions unambiguous. *See, e.g.*, *Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, 499 F. Supp. 3d 1178, 1188-90 (S.D. Fla. 2020) (interpreting the same exclusion language in *Urogynecology Specialist* and finding it unambiguous); *Wilson v. Hartford Cas. Co.*, 492 F. Supp. 3d 417, 427 (E.D. Pa. 2020) (same); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020) (same).

Outlier aside, *Urogynecology Specialist* is distinguishable as the clause at issue in that case stated that the insurer "[would] not pay for loss or damage caused directly or indirectly by . . . [the p]resence, growth, proliferation, spread, or any activity of 'fungi', wet rot, dry rot, bacteria or virus." 489 F. Supp. 3d at 1302. In holding that the clause did not

unambiguously apply to the coronavirus, the court reasoned that the virus "does not logically align with the group of . . . other pollutants" listed in the exclusion. *Id*. No similar problem exists here because the policy treats the exclusion for any "virus, bacterium or other microorganism" as a separate and distinct exclusion from "fungi, wet rot or dry rot." *See* R. 32-1 at 43 ("fungi, wet rot or dry rot" appearing in a different sub-section as "virus, bacterium or other microorganism"). And there can be little question that viruses, including the coronavirus, are similar enough to "bacterium or other microorganisms" that grouping them together is warranted. *See Virus*, Encyclopedia Britannica, https://www.britannica.com/science/virus (last accessed Aug. 9, 2021) (describing a virus as an agent that multiplies in living cells of animals, plants, or bacteria). So unlike in *Urogynecology Specialist*, there is no concern that the coronavirus, as a type of virus, does not "logically align" with the other pollutants listed alongside it.

Plaintiffs also rely on *Elegant Massage, LLC v. State Farm Mutual Auto Insurance*, 506 F. Supp. 3d 360 (E.D. Va. 2020). There, the policy excluded coverage for losses stemming from the "[g]rowth, proliferation, spread or presence" of a virus. The court read this together with other policy language to mean that the virus exclusion provision applied "where a virus has spread throughout the property." *Id*. at 379. The relevant language at issue here, however, sweeps more broadly, excluding from coverage loss or damage "caused directly or indirectly" by "any virus" whether or not the "loss event results in widespread damage or affects a substantial area." It is not clear what the difference is between "widespread damage" and damage that affects a "substantial area," but as explained, the exclusion still applies so long as the virus is *indirectly* responsible. *Cf. Image*

10

*Dental, LLC v. Citizens Ins. Co. of Am.*, 2021 WL 2399988, at *9 (N.D. Ill. June 11, 2021) (no coverage in coronavirus coverage dispute because the losses were at least "indirectly" caused by the virus).

*Elegant Message* is distinguishable for another reason. That court, sitting in diversity, found the policy's anti-concurrent causation clause inapplicable because such clauses are not recognized under Virginia law. This case, by contrast, involves interpretation of Illinois law, which *does* recognize anti-concurrent causation clauses, including the one at issue here. *See Riverwalk Seafood Grill*, 2021 WL 81659 at *3 (interpreting Illinois law and finding no coverage in light of policy's anti-concurrent causation clause).

A few additional points. First, Illinois law requires that the exclusion provision relied upon to deny coverage be "clear and free from doubt," and places the burden on the insurer to prove that the provision is applicable. *Rogers Cartage Co. v. Travelers Indem. Co.*, 103 N.E.3d 504, 521 (Ill. App. Ct. 2020). Nova has met that burden in this case because, as explained, the Virus Exclusion is unambiguous and defeats any potential coverage under the Business Income and Civil Authority provisions. Second, while the Seventh Circuit has not addressed whether a policy's virus exclusion provision enables insurance companies to deny coverage for losses arising out of the coronavirus pandemic, nearly every court in this District to consider the issue has found that they can. *See, e.g.*, *AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 503 F. Supp. 3d 602, 607 (N.D. Ill. 2020) ("[T]he virus exclusion itself made clear that the exclusion applied to civil authority coverage."); *Riverwalk*, 2021 WL 81659 at *3 ("[T]he plain language of the Virus

11

Exclusion is dispositive here and requires the Court to dismiss [plaintiff's] Complaint"); *Image Dental, LLC v. Citizens Ins. Co. of Am.*, 2021 WL 2399988, at *8 (N.D. Ill. June 11, 2021) ("COVID-19 is a virus. Since the Governor issued the shutdown orders to curb the spread of COVID-19, the virus was at least indirectly responsible for Image Dental's inability to legally use its property. So, the Virus exclusion also applies."); *M&E Bakery Holdings, LLC v. Westfield Nat'l Ins. Co.*, 2021 WL 1837393, at *4 (N.D. Ill. May 7, 2021) ("Thus the loss of income was an indirect result of the coronavirus and is therefore excluded from coverage."); *Mashallah, Inc.*, 2021 WL 679227 at *2 ("COVID-19 is clearly *any virus* that *directly* or *indirectly* caused damage to Mashallah's business") (emphasis in original); *Dental Experts, LLC v. Massachusetts Bay Ins. Co.*, 2021 WL 1722781, at *4 (N.D. Ill. May 1, 2021) (granting motion to dismiss based on similar exclusion language); *but see Legacy Sports Barbershop LLC v. Cont'l Cas. Co.*, 2021 WL 2206161, at *3 (N.D. Ill. June 1, 2021) (finding exclusion provision ambiguous since it excluded from coverage loss or damage caused by "microbes" not "virus[es]").

Finally, because the Virus Exclusion precludes coverage, Plaintiffs' bad faith claim necessarily fails. Section 155 of the Illinois Insurance Code provides a remedy to "insureds who encounter unnecessary difficulties resulting from an insurance company's unreasonable and vexatious refusal to honor its contract with the insured." *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002) (internal quotations omitted). "However, when an insurer denies the claim of an insured because no coverage exists, the insurer has not failed to honor its contractual obligations under an insurance policy." *Id.* "As such, Illinois courts allow a cause of action to proceed under Section 155

12

only if the insurer owed the insured benefits under the terms of the policy." *Id*. Here, the Virus Exclusion forecloses Plaintiffs' insurance claims based on the Business Income and Civil Authority provisions, so Nova has not failed to meet its contractual obligations. Plaintiffs argued in their opposition brief to Nova's motion for summary judgment that the bad faith claim should be subject to discovery and a hearing in order to prove up damages. But there can be no damages if no benefits are owed. *See Martin v. Ill. Farmers Ins.*, 742 N.E.2d 848, 857 (Ill. App. Ct. 2000) ("[A] defendant cannot be liable for section 155 relief where no benefits are owed."). Plaintiffs' bad faith claim is accordingly dismissed.

## Conclusion

For all these reasons, the Court grants Nova's motion for summary judgment, R. 34, and denies Plaintiffs' partial motion, R. 30. Because the Virus Exclusion bars coverage, all four counts in Plaintiffs' complaint are dismissed, and this civil case is terminated.

ENTERED:

*Thomas M Durkin*

———————————————
Honorable Thomas M. Durkin
United States District Judge

Dated: August 10, 2021